ALASKA STATE HOUSING AUTHORITY
and Continental Insurance Company, Appellants,

v.

James O. SULLIVAN et al., Appellees.

No. 1989.

Supreme Court of Alaska.

Jan. 28, 1974.

Allan A. Engstrom, of Davidson, Engstrom & Evans, Juneau, for appellants.

Thomas E. Schulz, Juneau, for appellee James O. Sullivan.

Robert J. Annis and Allen T. Compton, Juneau, for appellees Keil and Peterman Co., Inc. & U. S. Fidelity and Guaranty Co.

John E. Havelock, Atty. Gen., Juneau, for State and Alaska Workmen's Compensation Board.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.,

OPINION

RABINOWITZ, Chief Justice.

This appeal concerns the provision for notice of injury contained in the Alaska Workmen's Compensation Act.

On October 12, 1967, while employed in a logging operation by Keil and Peterman Co., Inc. (hereinafter referred to as Keil), appellee James Sullivan was injured when a rock rolled onto his left knee. The injury resulted in a one-week layoff for Sullivan. He filed a claim against Keil and was paid compensation for the injury by Keil's insurance carrier. Sullivan went back to work following the week layoff, and subsequently held a variety of logging jobs with different employers.

In July of 1969, Sullivan began working for the Alaska State Housing Authority (hereinafter ASHA) as manager and maintenance man at a housing project in Petersburg. On January 10, 1970, while shoveling snow for ASHA, Sullivan slipped on the ice and fell on the same knee that had been injured in the 1967 accident. Sullivan did not report this fall or an injury therefrom to anyone.

In March of 1970, while still employed by ASHA, Sullivan began work for a logging company in Petersburg. In May, Sullivan left the logging site and went first to a doctor in Petersburg and then to a doctor in Sitka, complaining of pain in his left knee and lower back. On June 11, Sullivan filed an application for an adjustment of a claim with the Workmen's Compensation Board, naming Keil and its insurance

carrier as defendants and asserting that the 1967 injury was now impairing his ability to work. Keil's insurance carrier notified the Board it was going to take the position that the present difficulty of Sullivan was due to the fall while shoveling snow in the employ of ASHA.[1] On July 15 the Board sent out a notice of hearing, and, in addition to Keil and its insurance carrier, the Board also named ASHA and its insurance carrier as party defendants. This was the first notice that ASHA received concerning Sullivan's January accident.

At the Board hearing ASHA urged dismissal of Sullivan's claim because he had failed to comply with the notice requirement set out in the Alaska Workmen's Compensation Act. The Board found that Sullivan's failure to give notice was excusable since Sullivan and his wife were managers for ASHA, ASHA was not prejudiced by its failure to receive formal notice, and the injury was not the type which a reasonably prudent man would report at the time of its occurrence because it did not seem to be of a serious nature. The Board also held that Sullivan's present condition arose in the course of his employment for ASHA, and that ASHA was liable for Sullivan's medical expenses.

ASHA appealed the Board's decision on the notice issue to the superior court. The superior court affirmed the Board's decision, holding specifically that while it was possible for Sullivan to inform ASHA of his fall, he was excused from doing so because he reasonably believed his injury resulted from the 1967 accident.

Appellant argues that both the Board and the superior court erred in finding that Sullivan had a satisfactory reason for failing to comply with the notice requirement of the Alaska Workmen's Compensation Act following his 1970 fall.

In Hewing v. Alaska Workmen's Compensation Board,[2] this court reaffirmed the standard of review that we employ with regard to findings of the Workmen's Compensation Board:

> This court has consistently maintained that while we will not vacate findings of the Workmen's Compensation Board if supported by substantial evidence,[3] our scope of review is not so limited where the Board's decision rests on erroneous legal foundations.[4] 512 P.2d at 898.

Appellant's challenge to the Board's decision and the superior court's affirmance thereof focuses on the Board's findings rather than on the legal basis for its findings; thus our review is governed by the substantial evidence test. We have held that "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might

---

1. In addition to this ground of nonliability, Keil also argued, and the Board so found, that any claim by Sullivan pertaining to the 1967 accident would be barred by the two-year Statute of Limitations contained in AS 23.-30.105(a). This portion of our Workmen's Compensation Act provides:

 The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

 *See* Grasle v. Alaska Workmen's Compensation Bd., 517 P.2d 999 (Alaska).

2. 512 P.2d 896 (Alaska 1973).

3. *E. g.*, Anderson v. Employers Liab. Assurance Corp., 498 P.2d 288, 289–290 (Alaska 1972); Wilson v. Erickson, 477 P.2d 998, 999 (Alaska 1970); Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963).

4. *E. g.*, Anchorage Roofing Co., Inc. v. Gonzales, 507 P.2d 501, 503 (Alaska 1973); Laborers and Hod Carriers Union, Local 341 v. Groothuis, 494 P.2d 808, 812 (Alaska 1972).

accept as adequate to support a conclusion.' " [5]

Although appellant does not question the legal foundation employed by the Board in determining the applicability of exceptions to the notice requirement, we think it will assist in understanding this issue to briefly set out the legal principles involved:

AS 23.30.100(a) provides that:

Notice of an injury or death in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death to the board and to the employer.

The purpose of such a limitation period pertaining to notice of injury has been stated to be dual:

first, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury.[6]

Professor Larson observes with regard to notice requirements that most workmen's compensation statutes simply date the limitations period from the time of the injury or accident, and say nothing about the time of discovery of the nature of the condition. Professor Larson continues:

Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.[7]

AS 23.30.100(d) provides three enumerated circumstances in which the failure to give notice of an injury will not bar a claim under the Alaska Workmen's Compensation Act.[8] Of significance for this appeal is the exception found in AS 23.30.-100(d)(2) which provides that the Board may excuse failure to provide notice "on the ground that for some satisfactory reason notice could not be given."

The Board, acting pursuant to the language of AS 23.30.100(d)(2), has in effect applied the "reasonableness" standard to the case at bar. The Board reasoned that if an injury was not of a type that a reasonably prudent man would report at the time of its occurrence because it did not seem to be of a serious nature, then the claimant would not be barred by his failure to comply with the 30-day notice requirement.[9]

The Board's equation of the reasonableness standard with the "satisfactory reason" provision of AS 23.30.100(d)(2) is not challenged by either party in this appeal. Rather, it is the Board's finding of

---

5. Anchorage Roofing Co., Inc. v. Gonzales, 507 P.2d 501, 503 (Alaska 1973), quoting from Thornton v. Alaska Workmen's Compensation Bd., 411 P.2d 209, 211 (Alaska 1966).

6. 3 A. Larson, Workmen's Compensation § 78.20, at 17 (1971); accord, Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 537 (Alaska 1966).

7. 3 A. Larson, Workmen's Compensation § 78.41, at 60 (1971). See, e. g., Langley v. Navajo Freight Lines, Inc., 70 N.M. 34, 369 P.2d 774, 776 (1962); Brown v. Safeway Stores, Inc., 82 N.M. 424, 483 P.2d 305, 307 (App.1970); Williams v. Julius Klein, Inc., 38 A.D.2d 140, 327 N.Y.S.2d 947, 949 (1972).

8. AS 23.30.100(d) provides:
Failure to give notice does not bar a claim under this chapter
(1) if the employer (or his agent in charge of the business in the place where the in-jury occurred) or the carrier had knowledge of the injury or death and the board determines that the employer or carrier has not been prejudiced by failure to give notice;
(2) if the board excuses the failure on the ground that for some satisfactory reason notice could not be given;
(3) unless objection to the failure is raised before the board at the first hearing of a claim for compensation in respect to the injury or death.

9. Support for the application of a "reasonableness" standard by means of the language in AS 23.30.100(d)(2) is found in a related statutory provision, AS 23.30.105(a). That provision provides in pertinent part that the time for filing claims (as distinguished from giving notice of injury) is "within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement."

fact that James Sullivan acted reasonably in not reporting his 1970 fall, a .finding specifically affirmed by the lower court, that appellant challenges in this appeal.

As stated above, the task of this court in reviewing the Board's finding is limited to a determination of whether there is substantial evidence to support the finding. In this regard, the record indicates that Sullivan injured his left knee while employed by Keil in October of 1967. At that time he filed a claim with Keil's insurance carrier. Sullivan testified before the Board that following this injury he regularly wore an elastic bandage on his knee. The injured knee, according to Sullivan, would "flare up" periodically, particularly when he was performing logging work on a steep incline. Sullivan fell on his injured left knee while working for ASHA in 1970. The knee caused him pain following the fall, and he stayed off of it for a few days, applying heat and wearing the elastic bandage. Sullivan testified that after the fall he thought the pain was simply "that damn knee" acting up again. He attributed the increasing pain to his 1967 accident rather than to the 1970 fall. Since the injury did not seem to be anything new, Sullivan did not notify the employer or the Board of any accident or injury. In June, Sullivan filed an application for adjustment of a claim, naming as the party defendant Keil, his employer at the time of the 1967 accident. It was at the urging of Keil's insurance carrier that ASHA was brought into the case.

The Board also had before it the reports of the doctors who examined Sullivan, and these reports reflect disagreement as to the cause of Sullivan's disability. Dr. Boettcher of the Mason Clinic in Seattle examined Sullivan on April 5, 1971, and concluded that Sullivan's present condition was a result of the 1967 injury. Dr. Longenbaugh, who examined Sullivan on July 21, 1970, wrote:

> I don't think it is possible to say whether the difficulty of 5/1/70 was due to the new re-injury or if it was coupled with it, or whether it was primarily due to the injury of several years previously. The fact that he apparently worked as a logger and got along well during the intervening years is very suggestive the atrophy and the weakness of the knee, with the accompanying low back problem, was more directly related to the incident of 1–10–70.

This inability of even the doctors to agree as to the specific cause of Sullivan's disability supports the conclusion that Sullivan could quite reasonably have believed his pain following the 1970 fall was attributable to the earlier accident.

 On the basis of the record, we conclude that there was substantial evidence to support the Board's finding that there was a satisfactory reason for Sullivan's failure to give notice of injury, namely, that a reasonable man would not have realized the serious. nature of the injury resulting from the 1970 accident.[10]

Appellant argues that Sullivan may have acted reasonably in believing his pain was attributable to the 1967 injury and in not notifying ASHA of his 1970 fall, but that he did not act reasonably in failing to immediately notify Keil and the Board of the 1970 fall. This argument misses the point. Both the Board and the superior court found that Sullivan, as a reasonable man, might well not have realized the 1970 fall was responsible for the growing pain in his knee and lower back. If Sullivan believed

10. The "reasonableness" test, as it is usually applied, simply suspends the running of the limitation period for notice (30 days in Alaska) until the claimant can reasonably be expected to realize the cause and nature of his injury. The Board found in the case at bar that Sullivan had a satisfactory reason for failing to give notice of the 1970 fall and that he therefore was not barred from filing a claim against ASHA and its carrier. This finding can be interpreted as incorporating the subsidiary finding that a 30-day period, during which Sullivan reasonably should have realized the cause and nature of his injury, had not elapsed prior to ASHA's being informed of its possible liability resulting from the 1970 fall of Sullivan.

the pain he was suffering was due to the 1967 injury, there would be no reason for him to notify anyone of the 1970 fall. Notice had already been given to both Keil and the Board concerning the 1967 injury at the time of the original accident.

Since the Board's finding that there was a satisfactory reason for Sullivan's failure to give notice of the injury resulting from the 1970 fall is supported by substantial evidence, the superior court's upholding thereof is affirmed.

Affirmed.